AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Iowa

| | |
|---|---|
| United States of America<br>v.<br><br>Elicia Denise Willett<br><br>Defendant(s) | )<br>)<br>) Case No.<br>)      3:21-mj-18<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   12/04/2020-01/26/2021   in the county of   Scott   in the
  Southern   District of   Iowa  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 875(d) | Extortion |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

James E. McMillan, Special Agent, FBI
Printed name and title

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date:   01/27/2021

_____
Judge's signature

City and state:   Davenport, Iowa

Stephen B. Jackson, Jr., U.S. Magistrate Judge
Printed name and title

FILED
By: Clerk's Office, Southern District of Iowa
11:53 am, Jan 27 2021

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

UNITED STATES OF AMERICA   )
                            ) ss
SOUTHERN DISTRICT OF IOWA  )

I, James E. McMillan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of a criminal complaint charging ELICIA DENISE WILLETT (hereinafter WILLETT) for violating Title 18, United States Code § 875(d), which prohibits the transmission of communications in interstate or foreign commerce containing threats to injure the reputation or property of the addressee with the intent to extort money or other thing of value. I have set forth only the facts that I believe are necessary to establish probable cause to conclude WILLETT violated Title 18, United States Code § 875(d) and that the offense occurred within the Southern District of Iowa. The charges are based upon events summarized below.

2. I am a Special Agent with the FBI and have been so employed since February 2002. I am current assigned to the Quad Cities Resident Agency of the Omaha Field Office. During the normal course of my duties, I conduct investigations involving a variety of criminal violations, to include violations of federal statutes involving use of the internet, cellular telephones, social media platforms, violent crime, and human trafficking.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      On January 11, 2021, the FBI opened an investigation based on information provided from a male victim (hereafter "the Victim"), a married man whose identity is known to the FBI, that he was being extorted by a female escort with whom he had a months-long relationship.

5.      The Victim met the escort by browsing the website skipthegames.com, which is a platform for escort advertisements. Users of the site can search anonymously for escorts based on sexual preference, geographical location, and other preferences. Escorts who post ads on the site typically provide a telephone number within the ad to facilitate contact with potential customers and arrange dates. The Victim contacted an escort who posted multiple ads with contact number ███-4120. The escort depicted in the ads was a petite, black female with a light-complexion.

6.      The Victim and the escort communicated via text message. The Victim utilized his cell phone to send and receive text messages from the escort to coordinate in-person meetings. Since early spring 2020, they met in various locations in both Iowa and Illinois and engaged in six-to-eight commercial sex transactions. The escort performed oral sex on the Victim during each meeting, after which the Victim provided a cash payment. The Victim and the escort never exchanged names, so the escort's true identity was unknown. The Victim described the escort as a petite, black female with a light complexion. He estimated her height at approximately 5'1" and weight at approximately 115 pounds.

7.      On or about December 4, 2020, the Victim had the escort meet him at his place of business. The escort performed oral sex on him inside the business. Unbeknownst to him at the

2

time, the escort took pictures of him putting on his underwear inside the business and walking to his vehicle afterward.

8.  On or about December 20, 2020, the Victim and the escort met again for oral sex. After they met, the escort told the Victim, via text, that she was approached by a third party who knew details about the Victim's family life and offered the escort $15,000.00 to film herself with the Victim. The escort then demanded $15,000.00 from Victim to make it go away. They exchanged texts throughout the day and discussed payment options.

9.  The Victim did not hear from the escort until she texted him from ▮▮▮▮-4120 on December 28, 2020. The Victim told the escort he had contacted a lawyer and knew this was extortion. Three (3) incriminating pictures, as described above, were sent to the Victim via text from ▮▮▮▮-4120 and ▮▮▮▮-6109. The Victim was so scared by the pictures that he told the escort he could come up with $10,000.00 that day to make it go away. The escort responded that she also wanted it to be done today and to let her know when he had it.

10. On December 28, 2020, the Victim withdrew $10,000.00 cash from his bank account. He and the escort agreed on a drop site for the payment through an exchanged of text messages. The escort originally wanted the drop site to be a church in Rock Island, Illinois. They eventually agreed to use the parking lot of a church in west Davenport, Iowa. The Victim left the money, which was in a brown paper bag, near a large garage on the west side of the church. He did not want to leave $10,000.00 unattended, so he parked nearby and watched. The Victim observed a white SUV arrive. The escort exited the passenger side, retrieved the bag, and re-entered the SUV. The Victim did not follow the SUV away.

11. The Victim and the escort exchanged texts after the $10,000.00 payment. The escort confirmed the pictures were deleted. However, the escort texted later that night, advised

3

the pictures were not deleted, and demanded another $5,000.00. The Victim said he needed until the end of January to get the money. In response, the escort said he had until the end of the month.

12.     The Victim deleted the above described texts and pictures out of fear they may be discovered by his spouse. The Victim provided phone records that detailed text message contacts between the Victim's cell phone, the escort, and ▮▮▮-6109.

13.     The FBI examined the phone records and found 31 text messages were exchanged between the Victim and the escort on December 4, 2020, which was the day they met at the business and the incriminating pictures were taken. On December 20, 2020, which was the day of their last in-person meeting and first extortion demand, 57 text messages were exchanged between the escort and Victim. On December 28, 2020, which was the day the incriminating pictures were sent by text to the Victim, 110 texts were exchanged, six of which contained picture or video files sent to the Victim from the escort. There were four incoming texts from ▮▮▮-6109 to the Victim, one of which contained a picture or video file.

14.     On January 15, 2021, the escort contacted the Victim via text from ▮▮▮-4120 and the following exchange occurred, which was provided to the FBI:

Escort: ??

Escort: ???

Escort: Hello

Victim: Sorry was away from my phone. U said you would give me until the end of the month. I don't have access to 5k yet. I had to pull out all my savings for the 10k. I'm working on trying to get the rest by the end of the month

Escort: Ok I think it's best if you work on something that will help every thing go Away

4

Victim: I get it. I need this to be done. You told me after the 10k you deleted everything. How can I trust it will go away at the end of the month?

Escort: Give me something good that's all there is to it!

15.    On January 18, 2021, the escort again contacted the Victim via text from ■■■-4120 and the following exchange occurred:

Escort: We need to figure something out now

Escort: ???

Victim: It was hard for me to get that 10k and keep it quiet. I'm trying to figure out how to get the other 5k. You're going to get it but I need more time.

Escort: I know that you can do more, I wanted you to do double the amount of 15,000

16.    On January 25, 2021, the escort again contacted the Victim via text from ■■■-4120 and the following exchange occurred:

Escort: ???

Escort: Hello

Escort: What day

Victim: I'm really busy with work today. Plus the snow is going to make tonight a mess. Can we do this tomorrow and get this over with?

Escort: Yes

Escort: You need to do double

Victim: Double what? I already paid 10. We agreed on 15 total.

Escort: Yes but from the beginning I wanted double the 15.

Victim: So you want 30? I can't keep that quiet. I can get the other 5 for this to be done tomorrow.

5

Escort: You can do 20? Make up a Lie say your (sic) putting it into stocks! Or something then I'll be gone for good.

Escort: ???

Victim: I don't have 20 just lying around. I can do 5 tomorrow. That was the original deal. Ur making this really hard on me

Escort: Yes but like I said what's more important

Escort: If you do what I ask and that what I originally wanted then everything can be done that's all I ask

Escort: What time are we meeting tmrw?

Victim: I have to work in the morning. It will have to be in the afternoon. I worked stuff around and can get 10k tomorrow but that's it. It has to all go away.

Escort: We'll chat tmrw

17. On January 25, 2021, the escort again contacted the Victim via text from 4120 and the following exchange occurred:

Escort: What time

Victim: I just got off. I would like to get this over with so this can be done. I can do whenever

Escort: Ok what are we agreeing on?

Escort: If u want this to be over then do what I wanted originally and we can be done that's all I ask

Victim: I can give the 10 today for it to all be done

Escort: Meet at same place

Escort: ??

6

Escort: Hello

Escort: ????

Victim: Yes, same place

Victim: Sorry, was trying to find a similar brown paper bag. All I have is a plastic grocery bag so that's what it is in

Escort: Okay now?

Victim: Yes. I'm on my way. How long for u?

Escort: 10 min

Escort: Text when I'm close

Victim: Ok

Escort: Where are you

Victim: I didn't want to be just sitting there. I just left. I dropped it by the green thing by the park.

18. The FBI provided the Victim the above-described grocery bag which contained several bundles of "bait bills" that resembled real money. The Victim left the bag near a green utility box on the property of the church in west Davenport where the previous $10,000.00 payment was dropped.

19. Within a matter of minutes, a female matching the physical description previously provided by the Victim arrived in the parking lot. She parked, exited the driver side, walked to the utility box, located the bag, picked it up, and headed back toward her vehicle.

20. A team of FBI Special Agents was covertly staged nearby. The escort was taken into custody while in possession of the money bag. She was subsequently identified as ELICIA DENISE WILLETT.

21. WILLETT was subsequently interviewed by the FBI and provided a post-*Miranda* statement. She advised she possessed multiple phone numbers that she obtained by using free mobile applications, one of which was ▮▮▮▮4120. She described her relationship with the Victim as friends at first then more as time progressed. She advised they engaged in sex acts, but she denied there were any direct payments for these acts. She advised she was approached by an unidentified woman directly after one of her encounters with the Victim. The female offered her $15,000.00 for a non-explicit video of her and the Victim together. WILLETT told the Victim what happened, and he offered to pay her double what she was offered. The Victim later refused to pay her. She later threatened to expose him and demanded payment because she felt she was owed the $30,000.00 he had promised her.

22. WILLETT advised the first payment location was the Victim's idea. She refused to answer when asked what she did with the money. When asked directly, "Did you spend it?" she responded, "I'm 24," with a whimsical look on her face. Specifically, regarding the Victim's text from earlier in the day – "I can give the 10 today for it all to be done" – WILLETT knew "10" meant $10,000.00.

## CONCLUSION

23. Based on the foregoing information, I submit there is probable cause to believe WILLETT violated 18 USC § 875(d) by transmission of communications in interstate or foreign commerce containing threats to injure the reputation or property of the addressee with the intent to extort money or other thing of value and that said violation occurred in the Southern District of Iowa.

Respectfully submitted,

_____
James E. McMillan
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone or other reliable electronic means on January 27, 2021:

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF IOWA